Tony SILVA, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 98 C 5063.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 24, 1999.

Tony Silva, Duluth, MN, pro se.

Asst. United States Attorney, Chicago, IL, for Respondent.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Tony Silva pled guilty to conspiring to smuggle wildlife and filing a false tax return, and was sentenced to a term of imprisonment of 82 months. Mr. Silva now moves for habeas corpus pursuant to 28 U.S.C. § 2255. For the following reasons, Mr. Silva's petition for habeas corpus is denied.

### Background

Tony Silva is internationally recognized as an expert on rare birds. In 1996, Mr. Silva pled guilty to a conspiracy involving smuggling birds in violation of various wildlife laws, and to filing a false tax return. According to the facts admitted in the plea agreement, between 1986 and 1991 Mr. Silva conspired with Gila Daoud (his mother) and several other co-conspirators to smuggle protected birds into the United States. Many of the smuggled birds were obtained illegally in South America by a co-conspirator and sold to another co-conspirator, who would mingle the birds with legally obtained birds and ship them to the United States. At a quarantine station, Mr. Silva and a co-conspirator would remove the illegally obtained birds while the United States Department of Agriculture employee was distracted. Subsequently Mr. Silva would sell the illegally obtained birds.

In the plea agreement Mr. Silva also admitted that between 1986 and 1988, he used other exporters in South America to smuggle various birds into the United States. In 1989, Mr. Silva purchased numerous Hyacinth Macaws that a co-conspirator captured in the wild, and he provided the funds for the macaws to be brought to Mexico. Mr. Silva moved to the Canary Islands to serve as curator at a private bird sanctuary in 1989, but until 1991 he continued his efforts to import into the United States the macaws being held in Mexico. Mr. Silva further admitted, for the purposes of relevant conduct for sentencing, selling various birds between 1989 and 1991. The government and Mr. Silva agreed to disagree on the application of the sentencing guidelines.

A sentencing hearing was held, and after three days of testimony from co-conspirators and a government informant, James Mackman, Mr. Silva moved to withdraw his guilty plea. Mr. Silva argued that when he moved to the Canary Islands in 1989 his participation in the conspiracy ceased. According to Mr. Silva, he only pretended to continue to participate so that his birds would not be abandoned. Mr. Silva's motion to withdraw his guilty plea was denied, and the denial was upheld by the Seventh Circuit on appeal. *United States v. Silva,* 122 F.3d 412 (7th Cir.1997). Ultimately Mr. Silva was sentenced to 82 months in prison. Mr. Silva now moves for habeas corpus review pursuant to 28 U.S.C. § 2255 on two grounds, ineffective assistance of counsel and the government's failure to disclose exculpatory material.

### Ineffective Assistance of Counsel

■ To prevail on his ineffective assistance of counsel claim, Mr. Silva must

establish both "that counsel's representation fell below an objective standard of reasonableness" and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove the second prong, prejudice, with respect to his guilty plea, Mr. Silva must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Mr. Silva was represented by David Schippers throughout his plea negotiations, sentencing, and direct appeal. The grounds alleged by Mr. Silva for his ineffective assistance of counsel claim can be divided into seven categories: 1) Mr. Schippers incorrectly advised Mr. Silva about the statute of limitations; 2) Mr. Schippers failed to move for a bill of particulars on the conspiracy count; 3) Mr. Schippers worked under a conflict of interest; 4) Mr. Schippers coerced Mr. Silva into pleading guilty; 5) Mr. Schippers forced Mr. Silva to meet with government agents and to appear before the grand jury; 6) Mr. Schippers failed to investigate the case properly; and 7) Mr. Schippers failed to develop a theory of defense.

*A. Statute of Limitations*

■ According to Mr. Silva, Mr. Schippers incorrectly advised him that the statute of limitations on the conspiracy claim went back 10 years rather than 5 years. Mr. Silva argues that, if he had known the statute of limitations only went back 5 years, he would not have pled guilty to the conspiracy count. Pursuant to 18 U.S.C. § 3282, an indictment must be returned within five years of the commission of the offense. Count one of the indictment, to which Mr. Silva pled guilty, charges Mr. Silva with a conspiracy against the United States under 18 U.S.C. § 371. "Conviction requires proof 'that the conspiracy still subsisted within the [five] years prior to the return of the indictment, and that at

least one overt act in furtherance of the conspiratorial agreement was performed within that period.' " *United States v. Nowak*, 448 F.2d 134, 139 (7th Cir.1971) (quoting *Grunewald v. United States*, 353 U.S. 391, 396, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957)).

■ The crucial question is "the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." *Grunewald*, 353 U.S. at 397, 77 S.Ct. 963. Count one of the indictment charges that the conspiracy began on or about July 1985 and continued through January 1992. The indictment containing count one was returned in December 1994. Of the 50 overt acts charged, 25 occurred within five years of December 1994, from April 1990 until January 1992. In an affidavit Mr. Schippers states that he was aware of the five-year statute of limitations in conspiracy cases, and that he explained to Mr. Silva that if the government established an overt act within that period, the government could go back to the beginning of the conspiracy and introduce evidence relating to events that may have occurred ten or more years earlier. (Schippers Aff. at ¶ 16). If Mr. Schippers told Mr. Silva that the government "can go back 10 years," as Mr. Silva alleges, Mr. Silva cannot establish prejudice, because in the context of this case the government could have gone back 10 years (or more) at trial. One-half of the overt acts charged by the government occurred within five years of the return of the indictment.

Mr. Silva also argues that the statute of limitations waiver he signed on August 16, 1994 is invalid. According to Mr. Silva, Mr. Schippers agreed to the waiver to allow the government to have Mr. Silva indicted on counts outside the statute of limitations. The waiver extended the five-year limitations period until November 30, 1994. On November 30, Mr. Silva was charged in a one-count indictment with a

violation of 16 U.S.C. §§ 3372(a)(1) and 3373(d)(1) involving the August 24, 1989 sale of two Queen of Bavaria Conures, a protected species. Without the statute of limitations waiver, the government could not have brought that charge. In December 1994 a grand jury returned a 15–count superseding indictment, which includes the conspiracy count to which Mr. Silva pled guilty. Mr. Silva did not plead guilty to the count involving the Queen of Bavaria Conures. In addition, the conspiracy count as charged in the indictment was within the statute of limitations regardless of the waiver, as 25 overt acts occurred within five years of the December 1994 indictment. Therefore Mr. Silva suffered no prejudice from the statute of limitations waiver.

### B) Bill of Particulars

■ Mr. Silva further argues that Mr. Schippers' failure to move for a bill of particulars on the conspiracy count constituted ineffective assistance of counsel. According to Mr. Silva, Mr. Schippers' failure to request a bill of particulars was founded in his misunderstanding of the statute of limitations on the conspiracy count. Mr. Schippers responds in an affidavit that a bill of particulars was unnecessary because the conspiracy count was very detailed. As discussed above, the indictment charges 50 overt acts in furtherance of the conspiracy. Dates are provided for all of the overt acts, and 25 of these acts occurred within five years of the indictment. Overall the indictment describes the conspiracy in 32 pages of detail. Under these circumstances it was not unreasonable for Mr. Schippers to decide that the indictment by itself was sufficient. Mr. Silva also did not suffer any prejudice regarding the statute of limitations, since so many of overt acts were within the five-year limitations period.

### C) Conflict of Interest

■ Mr. Silva next argues that Mr. Schippers' assistance was ineffective because he worked under two conflicts of interest. First, during the time that Mr. Schippers represented Mr. Silva, he also served as counsel for an association of IRS Criminal Investigations Division ["IRS–CID"] agents. Kevin Moss, an IRS–CID agent, was involved with Mr. Silva's case. The government admits that a potential conflict of interest existed but argues that Mr. Silva expressly waived any conflict.

■ Although a defendant has a Sixth Amendment right to conflict-free counsel, that right can be waived if such a waiver is knowing and intelligent. *Rosenwald v. United States,* 898 F.2d 585, 588 (7th Cir. 1990). At a status hearing on July 28, 1995, at which Mr. Silva was present, the potential conflict of interest was discussed. Mr. Schippers stated that he represented Agent Moss indirectly, at least on administrative matters.[1] The attorney for the government, Sergio Acosta, explained that potentially, if Agent Moss were called to testify, Mr. Schippers "might take it easy on him, to Mr. Silva's detriment." (Tr. July 28, 1995 at 21). When asked whether he understood the conflict and wished to waive, Mr. Silva answered affirmatively. At the end of the discussion, when Mr. Silva was again specifically asked whether he waived the conflict of interest, Mr. Silva responded: "Yes. David [Schippers] explained it thoroughly." (Tr. July 28, 1995 at 22). Thus as far as any conflict of interest involving Mr. Moss is concerned, the transcript indicates that Mr. Silva knowingly and intelligently waived his right to conflict-free counsel.

The second conflict of interest alleged by Mr. Silva involves Mr. Schippers' appointment as Special Investigative Counsel to the United States House of Representa-

---

1. Mr. Schippers explained that "[i]n addition to being Mr. Silva's attorney, I am the attorney for the Criminal Investigation Division Association which consists of the CID, special agents at the Internal Revenue Service, one of whom is Mr. Moss who is the case agent on this case. So I do indirectly at least represent Mr. Moss [on] administrative matters." (Tr. July 28, 1995 at 19).

tives Committee on the Judiciary. Mr. Silva argues that Mr. Schippers' representation was ineffective because Mr. Schippers used his position to "curry favor with prosecutors," eventually leading to his appointment as Special Investigative Counsel. (Habeas Pet. at 15).

Mr. Schippers responds that Mr. Silva's appeal to the Seventh Circuit was decided in August 1997, while his appointment as Special Investigative Counsel was first suggested in January 1998. Mr. Schippers was not working as Special Investigative Counsel at any time while he was representing Mr. Silva, and Mr. Silva has not pointed to facts in support of his claim that the appointment was made to award Mr. Schippers for ineffective representation of Mr. Silva, in particular, for covering up statute of limitations abuses. Therefore Mr. Silva is not entitled to a hearing on this claim.

### D. Coercion

█ In his habeas petition, Mr. Silva alleges that Mr. Schippers "coerced [him] to take a plea." (Habeas Pet. at 35). When Mr. Silva pled guilty he acknowledged that his plea was voluntary and not the result of promises, force, or threats, and that the sentencing decision rested with the court. (Tr. Jan. 30, 1996 at 19–20). Statements made at a plea hearing are presumed to be true, "a presumption overcome only if defendant satisfies a 'heavy burden of persuasion.'" *United States v. Malave*, 22 F.3d 145, 148 (7th Cir.1994) (quoting *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir.1987)). Mr. Silva has not alleged any basis for his claim that his plea was coerced, and his request for a hearing on the issue is accordingly denied.

### E. Meeting with Agents and Appearing Before the Grand Jury

Mr. Silva next argues that Mr. Schippers forced him to meet with government agents and to appear before grand juries. Because Mr. Silva has pointed to no evidence in support of this claim, and because the record indicates only that Mr. Silva's appearances were voluntary, Mr. Silva is not entitled to a hearing on whether Mr. Schippers' assistance was ineffective with respect to this issue.

### F. Failure to Investigate

Mr. Silva further argues that Mr. Schippers failed to investigate the case properly. In *Hill*, the Supreme Court set forth the standard for assessing a failure to investigate claim in the context of alleged ineffective assistance of counsel regarding a guilty plea:

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than to go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. *Hill*, 474 U.S. at 59, 106 S.Ct. 366.

In addition to showing such prejudice, of course, Mr. Silva also must show that Mr. Schippers' "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052.

### 1. Failure to Hire Wildlife Law Experts

█ Mr. Silva alleges that Mr. Schippers rendered ineffective assistance of counsel by failing to hire experts to assist with understanding various wildlife laws and regulations. Mr. Schippers points to one such expert by name, Jo Anne L. Garbe, and other unnamed experts who he claims "would have made for excellent expert testimony." (Habeas Pet. at 22). Mr. Schippers states in an affidavit that he researched all of the applicable wildlife laws, regulations, and cases, and that in his opinion the case against Mr. Silva depended on the credibility of witnesses. Mr. Silva has not stated how hiring experts on wildlife law would have affected Mr. Schip-

pers' understanding of the charges against Mr. Silva, or led Mr. Schippers to change his advice regarding the plea. An evidentiary hearing on this issue is not required.

## 2. Failure to Investigate Importation, Breeding, and Advertisement

■ Mr. Silva next argues that Mr. Schippers failed to investigate various sources and to contact experts regarding bird importation, breeding, and advertisement records. Mr. Silva's argument essentially is that millions of birds of the same species that the government accused Mr. Silva of smuggling were bred and imported into the United States during the time that the conspiracy took place, and that many species of birds that he was accused of smuggling were advertised for sale in the United States and were available for shipping into the United States. This argument ignores the fact that the charges against Mr. Silva were based on allegations that Mr. Silva's birds were illegal, not that other birds were legally or illegally imported into the United States during the time period of the conspiracy. In response to Mr. Silva's claim that Mr. Schippers did not investigate bird importation and breeding records, Mr. Schippers states that he reviewed hundreds of pages of documents given to him by Mr. Silva. In Mr. Schippers' opinion, general importation and breeding records were not probative of any possible defense. It was not objectively unreasonable for Mr. Schippers to draw this conclusion. As the government argues, that some of the species included in the allegations against Mr. Silva may have been available through other sources is irrelevant to the issue of whether Mr. Silva participated in the conspiracy. The government's case was not based on statistics but on specific allegations relating to Mr. Silva. Mr. Schippers' decision not to investigate further importation, breeding, and advertisement records "falls within the wide range of reasonable professional assistance.…" *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

## 3. Failure to Interview Witnesses

■ Mr. Silva next argues that Mr. Schippers failed to interview numerous witnesses and to investigate evidence establishing Mr. Silva's credibility, establishing the legality of Mr. Silva's birds, and establishing Mr. Mackman as an " 'out of control' " government informant with whom Mr. Silva did not conspire. (Am. Habeas Pet. at 6). Mr. Schippers states that Mr. Silva was asked to furnish a list of character witnesses, and that any of the individuals identified would have been produced if the case went to trial. Many were located outside of the United States, and some refused to talk to Mr. Schippers on the advice of counsel. Mr. Schippers also states that Mr. Silva admitted he smuggled birds in the 1980s, and that, at least at the sentencing stage, he thought these witnesses would do more harm than good. Mr. Silva has not shown that Mr. Schippers' actions regarding potential character witnesses were objectively unreasonable. In addition, it seems highly unlikely that, even if Mr. Schippers would have interviewed each character witness, he would have changed his recommendation about pleading guilty. As Mr. Schippers states, the government evidence included witnesses who testified as to Mr. Silva's smuggling activity and over 190 taped conversations.

As for Mr. Silva's claims that he is legally and factually innocent of all charges and that Mr. Schippers should have interviewed numerous witnesses and investigated various documents to prove his innocence, it is far from clear that such actions by Mr. Schippers would have led him to change his plea recommendation. First, Mr. Schippers states that he fully reviewed any documents given to him by Mr. Silva, and that he interviewed several witnesses and prospective witnesses. In his professional opinion, the case turned on credibility determinations. Second, many of Mr. Silva's claims depend on his statute of limitations argument, which, as discussed above, has no merit. Third, Mr. Silva

admitted at his sentencing hearing that he had falsified invoices and other documents to create the appearance that he had acquired certain wildlife legally. (Tr. June 11, 1996 at 258–265). Mr. Schippers could not have introduced fraudulent documents at trial. Fourth, Mr. Silva's claim that some of the birds, at some time, were the subject of a breeding loan seems irrelevant to allegations that he conspired to smuggle birds into the United States. Finally, Mr. Silva is claiming that an investigation into these witnesses and documents would have shown that he was factually and legally innocent of the charges to which he pled guilty. Mr. Silva, however, did plead guilty and in doing so he admitted the facts establishing his guilt. Mr. Silva has already been unsuccessful, in this court and in the court of appeals, in changing his story regarding his relationship with Mr. Mackman and in alleging the existence of two conspiracies rather than one. Mr. Silva's extensive lists of witnesses and documents that he now alleges would have demonstrated his innocence to Mr. Schippers are unconvincing.

### 4. Failure to Investigate Videotape

Mr. Silva also contends that Mr. Schippers failed to make use of a 1989 videotape of Mr. Silva's birds. Mr. Schippers states in his affidavit that the videotape was made available by the government in pretrial discovery. A letter from Mr. Acosta to Mr. Schippers in December 1995 confirms that the videotape was turned over at that time to Mr. Schippers. In his affidavit, Mr. Schippers explains that he determined the video was not probative of Mr. Silva's innocence because the government did not allege that Mr. Silva obtained the birds after 1989, but that he subsequently transported the birds illegally. Mr. Schippers' evaluation of the probative value of the videotape is objectively reasonable.

### G. Theory of Defense

Mr. Silva's proposed theories of defense have been rejected for reasons discussed above. These theories include that Mr. Schippers should have hired experts and should have investigated importation, breeding, and advertisement records, and that Mr. Schippers should have presented a statute of limitations defense. Mr. Silva has not shown that Mr. Schippers rendered ineffective assistance of counsel with respect to these claims.[2] In addition, in his affidavit Mr. Schippers explains that the only theory of defense that presented itself was Mr. Silva's own factual defense: "He never intended to smuggle birds into the United States for the government informant, but both he and his mother were making up stories to convince the government informant." (Schippers Aff. at ¶ 10). Moreover, there is no legal requirement that "[a defendant] be informed of all possible defenses prior to pleading guilty." United States v. Sims, 822 F.Supp. 1308, 1315 (N.D.Ill.1993).

### Government Misconduct

In addition to his ineffective assistance of counsel claim, Mr. Silva argues that the government concealed exculpatory evidence. To prevail on this claim, Mr. Silva "must establish the following: (1) that the prosecutor suppressed evidence; (2) that such evidence was favorable to the defense; and (3) that the suppressed evidence was material." United States v. White, 970 F.2d 328, 337 (7th Cir.1992) (citations and quotations omitted). "Evidence is material if there is a reasonable probability that it would have changed the outcome at trial." United States v. Kozinski, 16 F.3d 795, 818 (7th Cir.1994). This means "a probability sufficient to undermine the confidence in the outcome." Id.

In his habeas petition and related pleadings, Mr. Silva repeatedly alleges that the

**2.** To the extent that Mr. Silva is also claiming that he could not have entered a conspiracy with Mr. Mackman because Mr. Mackman was a government informant, the conspiracy charge does not limit the co-conspirators to Mr. Silva and Mr. Mackman.

government failed to turn over exculpatory materials. It is impossible to determine whether evidence is favorable to the defense and material without knowing the nature of the evidence. In his habeas petition, after alleging that the government refused to return "certain critical, strongly exculpatory evidence," Mr. Silva states that for example, the government would not return a Lilacine Amazon. (Habeas Pet. at 45). Mr. Silva has failed to explain how the Lilacine Amazon was material and favorable to his defense. In his November 2, 1998 affidavit, Mr. Silva states that among the records not returned by the government were records that he could use to show ownership of certain birds prior to 1989. Mr. Silva does not explain how such records would be favorable to his defense, but it seems they would be exculpatory only if Mr. Silva's proposed statute of limitations defense has merit which, as discussed above, it does not. In addition, whether Mr. Silva owned certain birds prior to 1989 does not shed light on what he did with those birds after 1989. Overall there is no indication that Mr. Silva's unidentified or identified exculpatory evidence is even favorable to his defense, much less material.

In his reply brief, Mr. Silva alleges that the government improperly seized and did not return Mr. Silva's personal collection of birds. The correspondence between the government and Mr. Silva regarding those birds, however, makes clear that Mr. Silva "gave permission to have the birds destroyed and for that purpose, abandoned them to the government." (October 14, 1997 letter from David P. Schippers to Sergio Acosta). For these reasons Mr. Silva's claim is denied.

### Conclusion

For the reasons discussed above, Mr. Silva's habeas corpus petition is denied.